Filed 10/9/13  P. v. Zamarripa CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B242141 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA122389) |
| v. | |
| RICHARD M. ZAMARRIPA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lori Ann Fournier, Judge.  Conditionally reversed and remanded with directions.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Richard M. Zamarripa appeals from the judgment following his jury conviction of possession of a controlled substance and being under the influence of a controlled substance. Defendant argues that the trial court erred in denying his motion to suppress evidence obtained as the result of an illegal search and seizure, and that it abused its discretion in denying his motion to strike his prior strike conviction. We disagree.

Defendant also requests that we review the record of the in camera hearing on his *Pitchess*[1] motion. Our review indicates that proper procedure was not followed. We conditionally reverse the judgment and remand for a new *Pitchess* hearing.

## FACTUAL AND PROCEDURAL SUMMARY

Around noon on July 24, 2011, Officer Murillo was on patrol near the Best Whittier Inn, which he knew to be a high-crime area. The officer saw defendant next to a pickup truck in the parking lot of the inn. He was surrounded by bags containing various items, including clothing. Another man stood next to the passenger side of the truck. At some point during the encounter, Officer Murillo called for assistance and an officer arrived to assist with the other man.

Officer Murillo at first pulled up to defendant's truck in his patrol car and asked defendant if he would mind speaking with the officer. Defendant said he did not mind. The officer asked defendant what he was doing, and defendant responded he was cleaning his truck. The officer then got out of the patrol car and asked if defendant was on probation or parole. Defendant answered he had been discharged from parole in January 2010 for drug possession. Defendant appeared nervous and twice put his hand in his right front pant pocket. The officer advised him he needed to see his hands for safety reasons. Defendant apologized and said he was nervous around police. He denied he had anything illegal in his possession. When asked if he would mind being searched for narcotics or weapons, defendant told the officer to "go ahead." The officer searched

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

defendant's waistline. In defendant's right front pant pocket, he found a folded $20 bill containing a crystal-like substance that turned out to be methamphetamine. Defendant was arrested and transported to the police station.

Two days later, defendant was arrested again, this time in a Motel 6 parking lot in Whittier. He exhibited symptoms of being under the influence of methamphetamine. Defendant agreed to give a urine sample at the police station. The sample was later tested and confirmed the presence of amphetamine and methamphetamine.

In a consolidated and amended information, defendant was charged with possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a).) Three prior felony convictions were alleged under Penal Code section 667.5, subdivision (b). One of them was alleged to be a prior serious or violent felony conviction for purposes of the Three Strikes law, Penal Code sections 1170.12, subdivision (a) through (d) and 667, subdivisions (b) through (i).

The court denied defendant's pretrial motion to suppress the evidence obtained during the July 24 encounter with Officer Murillo. It granted his *Pitchess* motion in part, and conducted an in camera hearing at which no discoverable documents were found. A jury convicted defendant as charged, and he admitted his prior convictions. The court denied defendant's motion to strike his prior strike conviction and sentenced defendant to prison for two years on count 1, doubled to four years due to the prior strike. A concurrent one-year term was imposed on count 2. His two prison priors were stricken. Defendant was given 56 days in custody credits. He was assessed various fines and fees.

This timely appeal followed.

## DISCUSSION

### I

Defendant contends the evidence obtained on July 24 should have been suppressed because his encounter with Officer Murillo was not consensual and amounted to an unlawful detention.

3

We review the trial court's findings for substantial evidence, but independently assess whether an illegal search or seizure occurred. (*People v. Hughes* (2002) 27 Cal.4th 287, 327.) Defendant testified he did not consent to be searched. The court credited the officer's version of events, finding the search was consensual. Defendant maintains the court failed to determine if the encounter with police was consensual.

A "consensual encounter" involves ""'no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and . . . may properly be initiated by police officers even if they lack any 'objective justification.'"'" (*People v. Hughes*, *supra*, 27 Cal.4th at p. 327, quoting *In re James D.* (1987) 43 Cal.3d 903, 911.) A seizure occurs only where "the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty . . . ." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) Factors indicating a seizure include "the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*Ibid.*)

Defendant argues that Officer Murillo's acts of pulling up next to defendant in a patrol car, asking him whether he was on parole, and calling a second officer for assistance amounted to an unmistakable show of authority. We disagree.

"It is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen that guides us in deciding whether compliance was voluntary or not." (*People v. Franklin* (1987) 192 Cal.App.3d 935, 941; but see *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1238 [both nature and manner of request must be examined].) In *People v. Bennett* (1998) 68 Cal.App.4th 396, an officer approached a man and asked a series of questions: whether the officer could talk to him for a moment, whether the man was on parole, and whether he would wait in the police car while the officer ran a warrants check. (*Id.* at p. 402.) Because the officer's tone of voice was calm and conversational, the encounter was held to be consensual. (*Ibid.*) In contrast, in *People v. Garry* (2007) 156 Cal.App.4th 1100, an officer shined the patrol car's spotlight onto a man, walked "briskly" towards him, and, without engaging him in

4

conversation, immediately asked about his probation and parole status. The officer's non-verbal actions were held to constitute an intimidating show of authority. (*Id*. at pp. 1111–1112.)

Officer Murillo testified he did not block defendant's truck with his patrol car and asked defendant through the passenger window if he would "mind" speaking with the officer. Defendant was asked whether he was on parole and was "advised" that the officer needed to see his hands for safety reasons. There is no evidence that the officer approached defendant with any urgency, or that he used a commanding, threatening or accusatory tone of voice at any time during the encounter. (See *In re Frank V.*, *supra*, 233 Cal.App.3d at p. 1239 ["A mere request that a citizen remove his hands from his pockets is not the same as a command to stop or stay"].) Defendant acknowledged he did not feel threatened.

Although another officer at some point arrived at the scene, there is hardly any evidence in the record regarding his actions. Officer Murillo testified he called for assistance at some point after he spoke to defendant, and a second officer was present when defendant consented to the search. That officer's attention was directed at the other man on the scene rather than at defendant. It is unclear exactly what the officer did, but there is no evidence he showed any force or authority. Defendant did not mention the second officer at all during his testimony, and the evidence does not indicate whether he was aware that Officer Murillo had called for assistance. In the absence of evidence that either officer engaged in any force or show of authority, we cannot conclude that the second officer's arrival turned what was until then a consensual encounter into a seizure. (See *U.S. v. Mendenhall* (1980) 446 U.S. 544, 554 [the "*threatening* presence of several officers" is one of several circumstances that might indicate a seizure], italics added.)

Since the encounter with Officer Murillo was consensual, the trial court properly denied defendant's motion to suppress evidence.

5

II

Defendant contends the court abused its discretion in denying his *Romero*[2] motion to strike his 2002 conviction of criminal threats (Pen. Code, § 422).[3]

A trial court's refusal to strike a prior serious or violent felony conviction is an abuse of discretion only if it is "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) In ruling on a *Romero* motion and in reviewing such a ruling, the courts "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the . . . spirit [of the Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Defendant moved to have his criminal threats conviction stricken because it was more than 10 years old; he had been granted probation; there was no violence in his subsequent record, which consisted of drug possession crimes; and he had a drug problem. Defendant claims the court exhibited antipathy and failed to consider him as an individual in denying the motion. The record does not bear this out. The court justifiably relied on defendant's long criminal history, which spans 25 years, his many convictions and failed attempts at probation, his two prison terms since 2002, and his continued commission of felony offenses.

Neither the remoteness of defendant's prior strike conviction, nor the lack of violence in his record or his drug problem necessarily take him outside the spirit of the Three Strikes law. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 163 [13-year-old conviction not dismissed where defendant did not refrain from criminal activity in the

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

[3] The probation report lists the crime as terrorist threats. Since 2000, title 11.5 of the Penal Code, containing section 422, has had the heading "Criminal Threats." (See *People v. Toledo* (2001) 26 Cal.4th 221, 224, fn. 1.)

interim]; *People v. Strong* (2001) 87 Cal.App.4th 328, 345–346 [strike conviction not dismissed despite absence of violence where defendant was career criminal]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 322 [drug problem not a mitigating factor without evidence of efforts to eradicate it].)

Defendant relies on *People v. Bishop* (1997) 56 Cal.App.4th 1245 (*Bishop*), where the dismissal of two of three prior strike convictions was upheld on appeal. His reliance is misplaced. As other courts have noted, *Bishop* predates *People v. Williams*, *supra*, 17 Cal.4th 148, and did not address whether the defendant was outside the spirit of the Three Strikes law. (*People v. Strong*, *supra*, 87 Cal.App.4th at p. 342.) Rather, the court in *Bishop* focused almost entirely on the fact that defendant's three strike convictions were for robberies committed 17 to 20 years before his current crime of petty theft. (*Id.* at p. 1251.) The holding in *Bishop* may not be read to mean that it would have been an abuse of discretion for the trial court to refuse to strike the prior strike convictions. (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1434.) To the contrary, the appellate court in that case was "of the opinion that Bishop appears undeserving of leniency." (*Bishop*, at p. 1251.)

The trial court did not abuse its discretion in refusing to strike defendant's prior strike conviction.

### III

The trial court granted defendant's *Pitchess* motion only as to complaints that Officer Murillo had previously falsified consent to search.[4] After an in camera hearing, the court determined there were no discoverable documents. Defendant asks us to independently review the materials considered by the trial court during the in camera hearing to ascertain that the court did not abuse its discretion in withholding discoverable information from him. We ordered the sealed transcript of the in camera hearing and after reviewing it conclude the court did not follow proper procedure.

---

[4] Defendant does not challenge the partial denial of his *Pitchess* motion.

When a defendant files a *Pitchess* motion, seeking discovery from a police officer's personnel records, the trial court rather than the custodian of records must determine whether potentially responsive documents should be produced to the defendant. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225–1226, 1229 (*Mooc*).) The custodian is not required to produce the officer's entire personnel record, but "should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." (*Id.* at p. 1229) The court may ask questions regarding the completeness of the record and must make a record of the documents it has examined. (*Ibid.*)

Here, the custodian of records testified under oath that he had the personnel complaints for Officer Murillo and that there were "[n]o complaints regarding falsified consent to search." The custodian did not produce the officer's personnel file for the court's review, nor did he state on the record what categories of complaints, if any, were included in the officer's file or why he chose to withhold them.

The procedure followed in this case is similar to that rejected in *People v. Wycoff* (2008) 164 Cal.App.4th 410, and *People v. Guevara* (2007) 148 Cal.App.4th 62. "[I]n cases such as this where the custodian of records does not produce the entire personnel file for the court's review, he or she must establish on the record what documents or category of documents were included in the complete personnel file. In addition, if it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them. Absent this information, the court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein. Such a procedure is necessary to satisfy the Supreme Court's pronouncement that 'the locus of decisionmaking' at a *Pitchess* hearing 'is to be the trial court, not the prosecution or the custodian of records.' [Citation.] It is for the court to make not only the final evaluation

8

but also a record that can be reviewed on appeal." (*Id.* at p. 69; *People v. Wycoff*, at pp. 414–415 [same].) [5]

We conditionally reverse the judgment and remand for a new *Pitchess* hearing to be conducted following the procedures laid out in *Mooc*, *supra*, 26 Cal.4th at page 1229, *People v. Wycoff*, *supra*, 164 Cal.App.4th at pages 414–415, and *People v. Guevara*, *supra*, 148 Cal.App.4th at pages 68–69.

## DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court with directions to hold a new *Pitchess* hearing in conformance with the procedures referenced in this opinion. If the trial court finds there are discoverable records, they shall be produced and the court shall conduct such further proceedings as are necessary and appropriate. If the court finds there are no discoverable records, or that there is discoverable information but defendant cannot establish that he was prejudiced by the denial of discovery, the judgment shall be reinstated as of the date of the court's ruling on these issues.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.                                SUZUKAWA, J.

---

[5] In *People v. Fuiava* (2012) 53 Cal.4th 622, 647, the Supreme Court clarified that in *Mooc*, *supra*, 26 Cal.4th 1216, it did not hold "that a failure to specify what documents in a file were not brought to court would, by itself, result in an inadequate record." But it declined to address whether "a failure to require that a custodian of records state for the record what documents were deemed nonresponsive, occurring *after* our decision in *Mooc*, would constitute reversible error." (*People v. Fuiava*, at p. 648, fn. 6, citing *People v. Guevara*, *supra*, 148 Cal.App.4th at p. 69.)

9